Good morning. My name is George Anthony Long and I'm the counsel for Alice Dela Cruz who challenges the grant of summary judgment to Andrew Santos, Santiago Tudela and Tom Palacios. In this case the Alice's claim against Santos was for familial deprivation, familial association based on the fatal shooting of her son Donald. Her claim against Mr. Palacios has to do with his interference with her interest or rights to the body of her deceased son Donald and her claim against Mr. Tudela was for the training of Santos but that claim is derivative to the action against Mr. Santos, George Santos. Now in granting summary judgment to Santos, the court utilized the incorrect legal standards. Instead of utilizing the standard applied to a 14th Amendment substantive deprivation due process, it used a standard applicable to the Fourth Amendment which is not the circumstance here because the plaintiff is Ms. Dela Cruz who is the mother of the deceased Donald. Isn't the 14th Amendment standard even a tougher burden for you? Well it is a tougher burden on the sliding scale, however if the court considers all of the evidence that Alice presented in the light most favorable to her as required under the law, then we believe that the record establishes that there are genuine issues of material fact for there were warranted resolution by a trier of fact in this case and to that extent we feel that the court improperly refused to consider the declaration of Alice's expert Claudio Nerida that was submitted in this case. The court basically excluded or refused to consider the declaration which we read to be purely on basis of credibility. The court basically was saying well we don't think his declaration is credible therefore it will not be considered but that is not the standard on summary judgment. A credibility determination is never made. That is for the trier of fact. Now according to the record, Officer Santos stated that he is the only living witness to this shooting. Interrogatory number 9 to Santos from Alice asked Santos to identify all persons known to witness or saw the shooting. Santos responded that he does not know of any witnesses to the shooting and that's on page 50 of the excerpts of right. So he should have said other than myself. Right, other than myself, right, or other than the deceased. Okay, so basically what we have is that Santos is acknowledging he's the only living witness to the shooting. Now the district court in Menjivar versus Los Angeles, which was cited in the moving paper in the opening brief, cites this court's opinion in Skoff versus Hendrick. There this circuit stated that cases of a deadly shooting or fatal shooting poses a problem particularly where the shooting officer is the sole surviving eyewitness. The court or the trial court should not place great reliance on the self-serving statement of the shooting officer. It says the judge must carefully examine all the evidence in the record such as medical reports, contemporaneous statements by the officers and the available physical evidence as well as any expert testimony proffered by the plaintiff to is internally consistent and consistent with other known facts. In other words, the court may not simply accept what may be a self-serving account by the police officer. Officer Santos was called to the scene because of a domestic dispute, is that right? Well, Officer Santos. Domestic altercation of some kind? He went to the scene because of some domestic altercation. The record shows that actually was another officer that was taking the call, but that officer didn't know where the scene was, but Officer Santos said he knew. So he went to meet the officer to take him to the scene because Officer Santos said that he's been to that scene about 20 to 25 times at least because of domestic violence or violence of some sort. When he got there, Mrs. Cruz's son was beating a man with a two-by-four? Well, according to the Officer Santos, he stated that when he looked around and he saw Donald who was standing over a person on the ground, according to Officer Santos, with a two-by-four in his hand. That is what Officer Santos said that he saw. And Officer Santos then stated he told Donald to stop it. He then says he told Donald to, oh, excuse me, after he told him to according to him, Donald stopped and turned around, looked at Officer Santos, swore at him. Then Officer Santos said that Donald cocked the two-by-four as if he was going to swing at him. Now the circumstances, according to Officer Santos, he was 10 to 15 feet away. One of the reasons I asked about this kind of a preliminary question was the individual who was on the ground? Yes. Who was that? The individual on the ground, according to the record, his name, I have to pull up his name, I'm sorry. Rangomar, excuse me, I think his name was Rangomar, Ernest Rangomar. Did Rangomar see anything? There's no indication of a statement by, I believe from Rangomar, of what he saw concerning the shooting. My understanding is that Rangomar, I'd have to go back through the record, but I don't see where Rangomar made a statement as to what he recalled. Because when the medical records of Rangomar, which was in there, which is submitted in the records show, he had a blood alcohol of 0.221 at the time. And the doctor stated that although he was conscious, he was not very, I guess, was not very alert and didn't really recall what the incident was. Who are the witnesses then, other than Narita, that would support your version of events? Well, Narita, I actually would admit, Narita was not a witness. He is an expert. He's a potential witness. He's a potential witness, correct. What evidence is there other than Narita? Other than Narita, we submit that there's some evidence, such as there's the statement of an officer DS, who said that when he arrived, that when officer Santos arrived at the scene, he had his weapons wrong when he exited the police car. According to Narita, the expert, that's indicative of a predisposition to use the weapon. Now, he had been told, hadn't he been told that somebody was trying to break into a house? He had heard that there was a disturbance. At one time, I think he said that there had been, he had heard that there may have been a knife involved or something of that nature. The police received a call that a man with a knife was trying to break into a house. That may have been something of those natures. That's correct. But when he arrived at the scene, okay, instead of assessing what the circumstances were at the scene, he exited with his gun drawn. Is there any other, again, then you tie that back to Narita's opinion, any other evidence or witnesses that would support your inferences or vision of what happened? I would say, except for some of the facts that Narita relies on, that would be the only, what I would say, other evidence or witnesses that would support Narita's conclusion, such as the police officer there who took the measurements of the shell cases. Now, Narita looked at that, and he opined, based on that examination, that Officer Santos was moving forward. So basically, what we have is neutral evidence, and then it's what's the, how that's interpreted. But he was excluded. I mean, it seems the District Court does have discretion to exclude an evidence based on the nature of the testimony, the criteria, the qualifications. Isn't that within the District Court's purview? If there's an issue on qualifications, but that's not the basis the District Court excluded it on. The District It was different from the facts of other people who were, who claimed that they were there or the statements of other people. Well, there's no foundation because it's not based on the facts that are there. Isn't that a basis for excluding an expert opinion? Well, but the fact, problem is, is that here, that his facts were based, that his determination opinions were based on facts. They were based on, he stated what he, the documents and the evidence that he reviewed in reaching his opinion. He reviewed all the documents that were provided to him in discovery, including the police measurements and the statements of Officer Santos. He did all these things. So his foundation is there. So that was not a basis for excluding Officer, I mean, Narita's expert opinion. Because the fact that, oh, his opinion is different from what other facts say of police officers. That's not a basis on summary judgment for discarding an expert, an expert's opinion. Because if that was the case, it would be very difficult, particularly in fatal shootings, to ever establish what really transpired. Because then you're left with, dealing with the self-serving statement of the officer. Counsel, did the judge have before the court the declarations of the other witnesses who gave statements? It had before the declaration of Officer Santos, the declaration. Of Rangamarra's declaration. I'm not sure if it had a declaration from Rangamarra. There are witness statements that are in the record. Yeah, there were witness statements, but they were not under oath. All right, there were witness statements that were prepared by the police, or written out by the police, or done at the direction of police, but not under oath. Those were sort of what plaintiffs relied on. And now, looking at time, I'd like to move to the claim that we have against also Palacios, based on the interference with the right to, of accessing the body, Donald's body. What's the clearly established right? The clearly established right is that in the Newman case, the circuit held, that if state law grants a next of kin an interest, or right, in the body of a deceased, then that is sufficient to satisfy a property interest for 1983 purposes. Here we have the section 868 of the restatement, which is the law of the commonwealth, which vests an interest and right in the next of kin in the body. And here, there was no, no lawful or valid regulation or authority that justified Palacios denying Dela Cruz access to the body, at least even viewing. But doesn't the restatement refer back to the local law? Well, in the commonwealth, there's a statute that says that doesn't the restatement refer to local law? The restatement refers to local law to the extent as who are the people or who are the persons that may have the property right of property interest. The comments to section 868 say that the designation of the right of disposition is created by individual state law. And so whatever the state law provides vis-a-vis disposition of the body governs. That is correct, Your Honor. But here what we have is that in the commonwealth, the statute states that if the commonwealth has not passed a statute, then you look to the restatement, and that is the governing law. But if you have a right to the body, Fifth Amendment right, or some kind of property right, but you're asking for immediate access and viewing. Yours goes a little bit further, doesn't it? No, it doesn't. They say, look, we're in the middle of a huge criminal situation. We're not saying you can't eventually view and take the body, but not now. So what's the constitutional right that's violated? Well, basically within the 868, even the comment, it states that it reaches when if it is improperly dealing with the body or prevents its proper burial. Now here, even the regulations that Palacios proposed. Does the body get to be buried? Eventually, yes. However, you must take into consideration when you say proper burial, you must take into consideration the cultural aspects. And as Adela Cruz stated in her declaration, that under their culture, that the family has to be with the body at times, and leading up even into the burial. So in that instance, that was a deprivation. You can think about how that's a constitutional deprivation, maybe on your rebuttal, because you're out of time. Thank you very much. So we hear it first for Mr. Santos, and then Mr. Lacobay. We'll hear from you following that. Good morning, Your Honors. May it please the court. My name is Brett J. Huseman, a Fisher Huseman. I represent the police officers in this matter, Officer Santos and Police Commissioner Tudela. My colleague, Mr. Lacobay, represents Director Palacios, the director of the hospital, and I'd like to reserve seven minutes of our argument time for his presentation. As this court knows, this is a, this issue, this case is before it on a grant of summary judgment in my client's favor. The court found that Officer Santos acted reasonably. Ms. Dela Cruz has brought two issues to this court's attention on appeal. The first issue is whether or not the correct standard was used, and the second issue is whether or not the affidavit of Mr. Nerita was the, was properly excluded by the court. Can you help me a little bit with the record? Um, there were, in fact, some eyewitnesses. Yes, there were, Your Honor. There were four eyewitnesses, I believe. He's looking for a yes. Okay, yes. I have some questions to follow. Sure. So there were eyewitnesses. Yes, there were. Some were family members of the person who was hit with a two-by-four. Yes, Your Honor. Um, some were other people who lived in the compound. I believe it's, it's the Rangemar family compound. Um, I, I think they're all in some way or another related. Okay. Uh, some of them heard, uh, uh, Officer Santos identify himself as a police officer. Yes, Your Honor. And he was in uniform? Yes, he was. Other witnesses, uh, heard, uh, Santos, uh, warn, uh, the son about advancing to stop doing what he was doing, that is beating, uh, the victim of the assault. Is that right? Yes, Your Honor. And warned him multiple times, uh, about approaching him? Yes, Your Honor. Then how can the interrogatory be answered saying there were no witnesses? The, the interrogatory was answered two ways. Is it, is it wrong? Is it inaccurate? I believe the, the, yes and no. I believe the, the, the, uh, there was inaccurate, um, um, in totality. In other words, there were X-ray eyewitnesses, but to my client's knowledge at the time he filled out the interrogatory, he wasn't, he was not involved in any of the investigations. Okay. And so he wasn't aware of, of the, the statements that were, were taken. Okay. Um, now, in the, in resolving summary judgment in your client's favor, did the court rely upon witness statements as opposed to affidavits? The, the court relied on the witness statements that were taken contemporaneously, uh, on the scene at, at the accident. Uh, so the answer to my question is yes. Yes. Was that appropriate? Um, I believe it was. I don't, there were, there weren't no hearsay objections to these, uh, witness statements. They were, um, they would have, they're, they're exempted from the hearsay because they were their contemporaneous business records of the, uh, the Department of Public Safety. Uh, I believe that they passed the hearsay test. They weren't objected to, uh, at, at the, uh, district court level. So I believe they were. The affidavit that, uh, the plaintiff's proposed was, uh, someone, uh, potentially expert in the use of deadly force by law enforcement? The, the, the, the affidavit that was excluded was, um, from Clyde Nerita and we don't dispute that he is an expert in DPS procedures and at running, uh, DPS. We do dispute, uh, and we did object to, and we include that in the supplemental excerpts of record, I believe one through six are objections to his specific affidavit. Um, he's not a forensics expert. Uh, and, uh, if you look at the actual affidavit that, uh, Mr. Nerita submitted, there isn't any evidence attached to it. Uh, Mr. Nerita says that he relied on all the, uh, all the documents that were turned over as part of discovery, but then the documents that he's relying on to buttress his case are not attached. So it's in the briefing and it was said today on all argument, but the shell casing report, well, that's not in front of the court. Uh, the shell casing report isn't included. It wasn't included to the district court. Um, there's no, there's no measurements. We have no idea where those shells were and how they were displayed. It's just an affidavit that says, well, I think he was moving forward. The difficulty is that if you read that, I think it's a footnote in the district court's opinion. It's almost like he's not saying he's not a qualified expert. He's just saying, I don't believe him. I mean, it sounds like, as counsel said, that it's a credibility attack on, um, officer or Mr. Nerita. The, I, I, and I would concede that the, uh, the court could come to that conclusion. I would submit, however, that the footnote on page, uh, eight of the excerpt of the record says that, um, the affidavit falls, uh, fails for all reasons cited by defendants and their opposition. And, uh, on, uh, the excerpts of record one through six, uh, we objected several times on the basis of reliability. We don't believe the, uh, expert was reliable. And the reason we don't believe the expert was reliable is, again, uh, the expert testified as to forensic evidence. The, the expert is not a forensic expert. Um, that falls outside the expertise. The other problems with the, the, um, expert's affidavit is this, this is actually just an affidavit that contradicts facts. It doesn't state, um, its methodology. There are no scientific papers attached to it. It's not a scientific paper. It, there's, there's no methodology described in how there was an arrival at, at his conclusions. It's completely unclear from its face. Additionally, the, and I've, I've said this, there, there's no support offered for the contradiction of the eyewitness accounts. There are, I believe, four eyewitness accounts, um, if you include, if you exclude Officer Santos and the, Ernie Ragamar, the individual who was being beaten by Mr. Sewell. The only reason that, that's a partial eyewitness account I would call, uh, he gives a statement and that is included in the excerpts. I believe that begins on, uh, Excerpt Record 147. Um, he gives a partial account of what happened, but at some point his beating became, uh, so severe that he passed out. Um, and so, but there are, uh, three other individuals who all witnessed the events all said the same thing, um, that Mr., or that Officer Santos arrived at the scene, um, told Mr. Sewell to stop, uh, three, on three distinct occasions, Mr. Sewell refused, and they all you know, you don't want to take the self-serving testimony of, of a police officer, but you don't have to take the self-serving testimony of a police officer in this case. He agrees with every eyewitness to the event that, uh, Mr. Sewell was not only attacking him at the time he was shot, but had just ceased his beating of Mr. Sewell. And there's also testimony in the, or not testimony, but the eyewitness statements indicate that it was Mr. Sewell's, uh, intent to kill some of these individuals. And so we would, uh, in conclusion, I would ask that, uh, that this Court affirm the District Court's decision. Um, we don't believe the, the standard, uh, is an issue. It, Ms., Ms., uh, Dela Cruz is asking for a higher standard, uh, applied to the same facts. There will not be a different outcome. And, uh, I will reserve the remainder of our time to, uh, Mr. Lockerbie. All right. Mr. Lockerbie? Good morning, Honorable Judges. Can you hear me? We can. Thank you. Thank you. Uh, in a, uh, a qualified immunity case, of course, that the, the, uh, in order to bring, to successfully bring such a case, the government official must have violated clearly established constitution or statutory rights of which a reasonable person would have known. Uh, in this case, uh, plaintiff has alleged that she had a property right in the body of Donald Sewell that is sufficient to support a 1983 claim. The property right, of course, must come from state law. Uh, Mr. Long explained that we have a statute in the Commonwealth that says, uh, that we have adopted the common law of the United States, basically. Uh, this stems from old trust territory days when there was no law in the Commonwealth. We've adopted the restatement, uh, the common law of the United States as expressed in the restatements. And it's not so expressed in as commonly understood and applied in the, uh, in the United States of America. Well, restatement, uh, a restatement of TARP's second section 868, uh, contains a, is a cause of action, uh, for, uh, interference, uh, with a dead body. And basically gives a, gives the next of kin who has the right of disposition of the body. That's the, that's the only, those are the only words that, that go to anything that might be considered a property interest. The right of disposition of the body, a cause of action for withholding, mutilating, operating on, basically just interfering, interfering with the, uh, with, with the body. And the only, the only function that could have been interfered with here would be the function of burial because it was the only right granted. The only right granted, uh, uh, it, it, it, it, it's the last sentence, uh, uh, per person, a person who has, uh, that, uh, interference with the next of kin or the person who has, who has the right to disposition of the body. That's the only property right granted. Now, it is true that in the Newman case, the, uh, uh, the, the Ninth Circuit, in a case in which there was lots and lots and lots of dead body law, the state of California, uh, found that there was a, that there was a property right, uh, granted, which was granted by statute, granted by the, by the cornea removal statute, which, which, uh, which in that case involved the removal of corneas from a, from a dead body, uh, by the, by the The statute that authorized this said that the coroner may remove the, the corneas of a deceased individual if he was not aware of any objection. But there was no requirement, there was no specific requirement in the, in the, in the statute that he ask, that he seek, uh, permission from anyone to see if there was an objection. And so he didn't do this, and not being aware of any objection, he went ahead and removed the corneas, and, uh, uh, that, that panel of the court then held that, uh, that because he, he should have made himself, that, that this grant of veto power, basically, to, to a family member by objecting, uh, created a constitutionally protected interest, and that the failure of the court, or the failure of the coroner to, to, uh, uh, to inquire as to whether there was any objection then became a denial of due process. There should have been a hearing, in other words, before the, uh, before the corneas were, were removed. So that, that is not applicable to, to our case. Uh, we're not interpreting any, any kind of statute. The, the, there, there is no law in the commonwealth interpreting in any way, uh, uh, the interference with dead body statutes. Now, we did have the one case, which Mr. Long and I tried, uh, the Cepeda case, in which, in which, uh, there was a body that was in a chiller in the morgue. There's only one morgue in the commonwealth, and that's, that's the, the commonwealth health center. Uh, there was a body that was in a chiller. The, the, uh, compressor on the chiller broke over a weekend. Nobody knew about it for a couple of days until I came back to work on Monday. The body was badly decomposed by that time, and, uh, a cause of action was brought under, under restatement of charge section 868. Uh, it was, it had nothing to do with section 1983, of course. It was not, it was not a 1983 action, and, and the extent of the property right was never an issue. Uh, the, the, the, the eight children bought the action, and they all had equal right to disposition of, to disposition of the body, so there, there was never any question about it. Uh, and, uh, even, even assuming, I don't want to get stuck on property right. I don't think there's one there, but, but, but even assuming that there were, say you reviewed, uh, uh, the, the law of the CMI and found there, there was a property right, it would still have to be clearly established. Uh, and, and as the, as that restatement section in that one case is the only, is the only case there is, and the case is not in point to what we're talking about. Uh, and not, not only was it not clearly established, but there is no law. Uh, if you, if you want to know if there's a property right in the CMI as alleged, that extends to the, to the extent that, that, uh, that plaintiff is seeking in this case, then really the only proven thing to do would be to send a certified question to the Supreme Court there and ask them to answer it. Uh, but, uh, absent, absent, absent that, there simply is no law. So, so a person in Mr. Palacios' position, he's the, he's the head of maintenance of the hospital basically. The more, the more falls under his supervision, more or less is a mechanical thing. Uh, and, and, uh, uh, you know, we have, we have regulations that, that, that dealt with, well there's a statute that deals with, that deals with autopsy requests in the case of violent deaths. Uh, autopsies are, are medical deaths. An autopsy can be requested by the Attorney General or the Secretary of Public Health if, if a person dies under circumstances where there might be some communicable disease or something. We need to know about that. Uh, and. Mr. LaCovette. Yes. You don't have the benefit of our little clock, but I've let you go beyond your time. I'm sorry. That's not, no, it's not at all a problem, but perhaps you want to think about summing up. Uh, okay. Uh, Mr. Palacios properly relied on, on, on regulations that we had and on hospital policy. And these are the same policies that, that are in effect in every coroner's office in the United States of America. Nobody allows viewing of a police case body because it would disturb the evidence, obviously. Uh, and, uh, so there's, if there's any, if there's anything clearly established about this is that you can't do it. And, and, uh, uh, Mr. Palacios was well within the bounds, within the bounds of, of law and of reason and acted reasonably in all respects. And that's all I have unless you have questions. I think not. Thank you. Thank you. You used up your time, but you've come a long way, so we're going to give you another minute or so for rebuttal. Thank you very much. Uh, basically, um, 868 gives a, uh, Section 868 of restatement gives an interest in a deceased body. And in the Newman, this court recognizes that if there's an interest of entitlement under state law in a body, that then that creates a property interest for purposes of 1983. Because it recognizes that the property interest isn't combined to the strict sense of property itself. It goes to the sense of an interest of entitlement. And we have that under Commonwealth law by the Restatement 868, which applies and operates as a state statute. And under the comments to the code, it, it reaches to a person who improperly deals with the body or a person who denies his proper burial. And here, there's absolutely no valid regulation that's justified, um, giving Alice access to her son's body. The regulations of policy they rely on were never properly promulgated. But to an extent, even if you want to view them as being appropriate, they provide a procedure for viewing. And she was not apprised of those procedures, nor did they take advantage of it to allow her to have those procedures to view. So that is an interference under 868. And finally, with respect to, um, um, Officer Santos, um, he relies heavily on the case of Holes v. Pooler in his case. But in that case, there was at least a warning shot fired before there was deadly force use. No such thing happened in this case. In any event, we feel that the, uh, exclusion of or refusal to consider Narita's declaration was improper, and the grant of summary judgment, uh, in this case must be reconsidered and reversed. Thank you very much. Thank you. Uh, de la Cruz v. Palacios is now submitted. Thank all counsel for your argument this morning, and we're adjourned. All rise.
judges: Hawkins, McKeown, Rawlinson